OPINION OF THE COURT
Jones, J.
Where a defendant’s conduct is negligent as creating an unreasonable risk of bodily harm to a plaintiff and such conduct is a substantial factor in bringing about injuries to the plaintiff in consequence of shock or fright resulting *224 from his or her contemporaneous observation of serious physical injury or death inflicted by the defendant’s conduct on a member of the plaintiff’s immediate family in his or her presence, the plaintiff may recover damages for such injuries.
These two appeals pose the same question of law — whether in addition to or apart from other damages to which a plaintiff may be entitled in consequence of the negligence of the defendant, he may recover for emotional distress occasioned by his witnessing injury or death caused by the defendant’s conduct to a member of the plaintiff’s immediate family. The courts below have answered this question in the negative. We now reverse in each case.
Bovsun v Sanperi
In Bovsun, a father, mother and daughter commenced an action for personal injuries sustained by them in a two-car collision. The father, who had been driving the station wagon in which his wife and daughter were passengers, settled before trial. The mother and daughter are now appellant plaintiffs before us.
On May 24, 1975, due to mechanical difficulties the station wagon in which the members of the Bovsun family were riding had stopped at the side of the Southern State Parkway in Nassau County. Jack Bovsun, father and driver, alighted from the vehicle, went around to the rear, and leaned inside the open tailgate window. Selma Bovsun, his wife, remained seated in the front passenger seat, and Mara Beth Bovsun, their daughter, was in the rear seat. At this point the Bovsun station wagon was struck in the rear by an automobile owned by defendant Rosario Sanperi and driven by defendant Gary T. Sanperi. Jack Bovsun was seriously injured when he was pinned between the two vehicles. The mother and daughter were thrown about the station wagon by the force of the impact but suffered less serious physical injuries than Jack Bovsun. Although neither mother nor daughter actually saw the Sanperi car strike their station wagon (they were facing forward or to the side), both were instantly aware of the impact and the fact that Jack Bovsun must have been *225 injured and each thereafter immediately observed their seriously injured husband and father.[1]
At the start of the trial as jurors were being selected, defendants’ attorney objected to any reference being made to emotional distress plaintiffs might have suffered as a result of observing Jack Bovsun’s injuries. After hearing arguments from counsel and with an awareness of the significant factual elements of plaintiffs’ case, the trial court ruled that the proof would be limited to plaintiffs’ own direct physical injuries and that no mention could be made during the voir dire of any injuries attributable to emotional distress. To expedite appellate review, defendants’ motion to preclude plaintiffs from examining the prospective jurors as to plaintiffs’ emotional distress was deemed a motion to dismiss plaintiffs’ claims for damages with respect thereto, and that relief was granted.
On plaintiffs’ appeal, the Appellate Division affirmed, citing Kugel v Mid-Westchester Ind. Park (90 AD2d 496). Thereafter, the Appellate Division granted plaintiffs leave to appeal to our court.
Kugel v Westchester Industrial Park, Inc.
In Kugel, plaintiffs, a father and mother, were riding with their two infant daughters in the family car along a roadway in the Mid-Westchester Mall in Cortlandt, New York, on June 3, 1978. As alleged in their verified complaint and bill of particulars, plaintiff Lawrence Kugel was driving the vehicle, his wife, plaintiff Lydia Kugel, was in the front passenger seat with their one-year-old daughter Stephanie in her lap, and their other daughter Karen, four years old, was also seated in the car. The Kugel car was struck by an automobile owned by defendant Barbara B. Rooney and driven by defendant Thomas Rooney, allegedly *226 in a reckless manner and at an excessive speed. Lydia Kugel suffered a fractured clavicle in the collision, Lawrence sustained a broken finger, and Karen suffered abdominal injuries. Stephanie Kugel died a few hours after the accident as a result of her various, severe injuries, alleged in the complaint to have been observed by plaintiffs.[2]
Plaintiffs served a summons and complaint to commence this action, seeking, inter alia, in their fourth cause of action damages for “the immediate severe emotional trauma of seeing Stephanie Kugel suffer extreme physical injury within their close proximity.” By notice of motion, defendant Mid-Westchester Industrial Park, Inc., which owns and operates the Mid-Westchester Mall, moved for partial summary judgment dismissing the fourth cause of action (along with the fifth and sixth causes of action), contending that it did not allege a legally cognizable claim. Defendants Thomas and Barbara Rooney thereafter also moved for summary judgment dismissing those causes of action. Special Term granted the motions and dismissed the causes of action, ruling that New York does not permit a cause of action to be maintained for the emotional distress suffered by the parents of an infant child who is killed in an accident.
Plaintiffs appealed the Special Term order to the Appellate Division. While that appeal was pending, plaintiffs settled or discontinued all causes of action other than those for emotional trauma attributable to the injury and death of their daughter Stephanie, which were expressly reserved.[3] The Appellate Division thereafter affirmed, holding that Special Term had correctly concluded that there is no cause of action in New York for emotional trauma suffered by the parents of a child injured or killed as the result of negligence. According to the court, plaintiffs’ direct involvement in the accident is only relevant insofar *227 as it creates a cause of action on their own behalf for injuries directly inflicted on them. The court reasoned that the inability to circumscribe liability in a reasonable fashion and the possibility of unlimited liability would require dismissal of plaintiffs’ emotional distress claims regardless of whether plaintiffs were directly involved in the accident. The Appellate Division thereafter granted plaintiffs’ motion for leave to appeal to our court.
Analysis of Legal Issues
Traditionally, courts have been reluctant to recognize any liability for the mental distress which may result from the observation of a third person’s peril or harm. The law in California relating to bystander recovery was greatly altered, however, by that State’s Supreme Court ruling in Dillon v Legg (68 Cal 2d 728) that damages may be recovered for the emotional trauma caused when a plaintiff witnesses the injury or death of a close relative even though the plaintiff is not himself within the zone of danger of physical injury, provided that the emotional injury is reasonably foreseeable.[4] Soon after the Dillon decision, our court in Tobin v Grossman (24 NY2d 609) rejected this foreseeability approach to bystander recovery. In Tobin, a mother, who had been in no danger of bodily harm herself, sought damages for the mental distress that she suffered in viewing the serious injuries sustained by her child when the child was struck by an automobile. We recognized in that case that foreseeability is not the sole test of whether a legally cognizable duty is owed. In reliance on rationale grounded in public policy — that liability to the foreseeable bystander could not be limited in any rational way and could lead to unlimited liability for negligent conduct — we declined to recognize a cause of action for the emotional distress suffered by the foresee *228 able observer of an accident.[5] In so doing, in obiter dictum we questioned the zone-of-danger analysis.
In disposing of the appeal in Tobin we were not, however, required to confront the precise issue presented to us for the first time in the two appeals now before us inasmuch as the plaintiff in Tobin had not been within the zone of danger of bodily harm. We there phrased the legal question posed as “whether the concept of duty in tort should be extended to third persons, who do not sustain any physical impact in the accident or fear for their own safety” (24 NY2d, p 613). We did note that the approach of permitting recovery “for the inseparable consequences of fear for” a relative’s safety, as well as one’s own safety, where the plaintiff is in the zone of danger “has been said to be a rather arbitrary limiting rule” (24 NY2d, p 616). We have also elsewhere recognized, however, that arbitrary distinctions are an inevitable result of the drawing of lines which circumscribe legal duties (Kennedy v McKesson Co., 58 NY2d 500, 507), and that delineation of limits of liability in tort actions is usually determined on the basis of considerations of public policy (De Angelis v Lutheran Med. Center, 58 NY2d 1053, 1055; Pulka v Edelman, 40 NY2d 781; see Prosser, Torts [4th ed], § 3, pp 14-16).
The zone-of-danger rule, which allows one who is himself or herself threatened with bodily harm in consequence of the defendant’s negligence to recover for emotional distress resulting from viewing the death or serious physical injury of a member of his or her immediate family, is said to have *229 become the majority rule in this country.[6] It is premised on the traditional negligence concept that by unreasonably endangering the plaintiff’s physical safety the defendant has breached a duty owed to him or her for which he or she should recover all damages sustained including those occasioned by witnessing the suffering of an immediate family member who is also injured by the defendant’s conduct. Recognition of this right to recover for emotional distress attributable to observation of injuries suffered by a member of the immediate family involves a broadening of the duty concept but — unlike the Dillon approach — not the creation of a duty to a plaintiff to whom the defendant is not already recognized as owing a duty to avoid bodily harm. In so doing it permits recovery for an element of damages not heretofore allowed. Use of the zone-of-danger rule thus mitigates the possibility of unlimited recovery, an overriding apprehension expressed in Tobin, by restricting liability in a much narrower fashion than does the Dillon rule. Additionally, the circumstances in which a plaintiff who is within the zone of danger suffers serious emotional distress from observing severe physical injury or death of a member of the immediate family may not be altogether common.[7]
The zone-of-danger rule has also been adopted in the Restatement of Torts, Second, as it had been at the time of our decision in Tobin. Subdivision (2) of section 436 provides that “If the actor’s conduct is negligent as creating an unreasonable risk of causing bodily harm to another otherwise than by subjecting him to fright, shock, or other similar and immediate emotional disturbance, the fact that such harm results solely from the internal operation *230 of fright or other emotional disturbance does not protect the actor from liability.” Subdivision (3) of that section further provides that “The rule stated in Subsection (2) applies where the bodily harm to the other results from his shock or fright at harm or peril to a member of his immediate family occurring in his presence.” Thus, section 436 would subject a defendant to liability for a plaintiff’s immediate emotional distress from viewing bodily harm to an immediate family member where the defendant’s negligent conduct also threatens bodily harm to the plaintiff.[8] The American Law Institute explains that the rationale for “this exception to the general rule that there cannot be recovery for emotional disturbance, or its consequences, arising from the peril of a third person lies in the fact that the defendant, by his negligence, has endangered the plaintiff’s own safety and threatened him with bodily harm so that the defendant is in breach of an original duty to the plaintiff to exercise care for his protection.” (Restatement, Torts 2d, § 436, subd [3], Comment f.)
Inasmuch as the zone-of-danger rule provides a circumscribed alternative to the apparently sweeping liability recognized in Dillon v Legg (68 Cal 2d 728, supra) and does so within the framework of traditional and accepted negligence principles by using an objective test of whether the plaintiff was unreasonably threatened with bodily harm by the conduct of the defendant, we view it as comporting with the requirements set out in Tobin of a “reasonably objective” standard which will “serve the purpose of holding strict rein on liability” (Tobin v Grossman, 24 NY2d 609, 618, supra)[9] We therefore hold that where a defendant *231 negligently exposes a plaintiff to an unreasonable risk of bodily injury or death, the plaintiff may recover, as a proper element of his or her damages, damages for injuries suffered in consequence of the observation of the serious injury or death of a member of his or her immediate family — assuming, of course, that it is established that the defendant’s conduct was a substantial factor bringing about such injury or death.[10]
In so holding, we reject any suggestion that the zone-of-danger rule is overly susceptible to fraudulent claims or that the emotional injuries claimed here are incapable of acceptable proof. We previously disposed of these arguments in Battalla v State of New York (10 NY2d 237, 240-242): “Although fraud, extra litigation and a measure of speculation are, of course, possibilities, it is no reason for a court to eschew a measure of its jurisdiction. ‘The argument from mere expediency cannot commend itself to a Court of justice, resulting in the denial of a logical legal right and remedy in all cases because in some a fictitious injury may be urged as a real one.’ * * * The only substantial policy argument * * * is that the damages or injuries are somewhat speculative and difficult to prove. However, the question of proof in individual situations should not be the arbitrary basis upon which to bar all actions * * * In the difficult cases, we must look to the quality and genuineness of proof, and rely to an extent on the contemporary sophistication of the medical profession and the ability of the court and jury to weed out the dishonest claims.”
We are not suggesting that any trifling distress would be sufficient to support recovery of damages under the zone-of-danger rule. Rather, the emotional disturbance suffered must be serious and verifiable (see Restatement, Torts 2d, § 436, subd [3], Comment g). Additionally, the compensa *232 ble emotional distress must be tied, as a matter of proximate causation, to the observation of the serious injury or death of the family member and such injury or death must have been caused by the conduct of the defendant.
The zone-of-danger rule that we adopt here is not inconsistent with the past decisions of our court that have denied recovery for emotional distress attributable to a family member’s death or injury (e.g., Lafferty v Manhasset Med. Center Hosp., 54 NY2d 277; Vaccaro v Squibb Corp., 52 NY2d 809; Becker v Schwartz, 46 NY2d 401; Howard v Lecher, 42 NY2d 109). None of those cases involved plaintiffs who had themselves been subjected to a danger of bodily harm, although some of the plaintiffs had been present during, had observed, and even had participated in the negligent conduct. In Becker v Schwartz (46 NY2d 401, supra), in which the plaintiffs were not exposed to bodily harm, it is significant that although no recovery was allowed for emotional distress, the plaintiffs were allowed to seek recovery for pecuniary losses sustained in consequence of the defendant’s breach of due care owed them in that regard. Similarly, in our most recent decision in this area, Kennedy v McKesson Co. (58 NY2d 500, supra), although the plaintiff there was also allowed to seek recovery for his pecuniary losses, recovery of damages for emotional disturbance was denied — he had not been exposed to a risk of bodily harm by the negligence of the defendant. Moreover, in Kennedy the person whose death the plaintiff witnessed was not a member of his immediate family. In none of these cases would the result have been different under the rule that we apply in this case.
We recognize that our decision in these two appeals may be perceived as overruling, or at least as rejecting in a significant respect, the rationale on which our decision in Tobin was predicated, notwithstanding that the precise issue presented in the appeals now before us was not presented in Tobin.[11] In the factual situation posed in Tobin we would today reach the same conclusion that was reached in that case inasmuch as the plaintiff mother there *233 was not within the zone of danger and the defendant breached no duty of reasonable care owed to her. We are not today creating a new cause of action which has not heretofore existed under the tort law of New York; rather we are recognizing the right of a plaintiff to whom the defendant has owed but breached a duty of reasonable care (as determined under traditional tort principles) to recover as an element of his or her damages, those damages attributable to emotional distress caused by contemporaneous observation of injury or death of a member of the immediate family caused by the same conduct of the defendant.[12] There may be an enlargement of the scope of recoverable damages; there is no recognition of a new cause of action or of a cause of action in favor of a party not previously recognized as entitled thereto. In conformity with traditional tort principles, the touchstone of liability in these cases is the breach by the defendant of a duty of due care owed the plaintiff.
Application of the Law to These Appeals
Turning, then, to the appeals before us, the factual situations claimed bring both cases within the zone-of-danger rule. In each case plaintiffs assert that they were subjected to an unreasonable risk of bodily injury by negligent conduct on the part of defendants. In each, the seriously injured or deceased person was a member of the immediate family of plaintiffs, each of whom alleges serious emotional trauma as a result of observing the injury or death.[13] Although plaintiffs in Bovsun did not actually see their husband and father being injured, they do assert their instantaneous awareness that he had been injured as well as their observation of him immediately after he was struck by defendants’ automobile. Plaintiffs in Kugel claim similar observations. Thus, the claims in both cases are sufficient, if substantiated by the evidence, to entitle plain *234 tiffs to recover for their asserted emotional distress damages.
For the reasons stated, in Bovsun, the order of the Appellate Division should be reversed, with costs, defendants’ motion to dismiss denied and the causes of action dismissed, reinstated. In Kugel, the order of the Appellate Division should be reversed, with costs, and defendants’ motions for summary judgment denied.

. In neither of these cases does the record contain a particularized description of precisely what occurred or the detailed sequence of events. Each case has been disposed of by the courts below on procedural applications in the nature of motions to dismiss based on a general description of the evidence that plaintiffs asserted would be offered. Inasmuch as plaintiffs’ claims have been denied in each case on the broad proposition that our courts do not allow recovery for emotional distress caused by observation of injuries to another, no careful attention has been paid to whether the particular facts in either case would meet any one of the several tests under which recovery has elsewhere been allowed. Accordingly, we do not now address the sufficiency of the evidence to meet the standard we hold applicable. Our present decision is only that in both cases it was error to foreclose plaintiffs from proceeding to trial.

. (See n 1, supra, p 225.)

. Plaintiffs had also sought in their fifth cause of action to recover damages for the emotional distress they suffered between the time of the accident and Stephanie Kugel’s death, including the trauma of her funeral and their subsequent mourning for her, and had sought recovery in their sixth cause of action for the ongoing trauma caused by the loss of their daughter and the resulting change in their family. Plaintiffs have withdrawn those causes of action in our court.

. Courts in 13 other States have chosen to adopt the Dillon v Legg (68 Cal 2d 728) rule and allow a bystander who is outside the zone of danger to sue for the emotional distress of observing a relative’s injury or death. (Leong v Takasaki, 55 Hawaii 398; Barnhill v Davis, 300 NW2d 104 [Iowa]; Dziokonski v Babineau, 375 Mass 555; Culbert v Sampson’s Supermarkets, 444 A2d 433 [Me]; Toms v McConnell, 45 Mich App 647; Entex, Inc. v McGuire, 414 So 2d 437,444 [Miss]; Corso v Merrill, 119 NH 647; Portee v Jaffee, 84 NJ 88; Ramirez v Armstrong, 100 NM 538; Paugh v Hanks, 6 Ohio St 3d 72; Sinn v Burd, 486 Pa 146; D’Ambra v United States, 114 RI 643; Apache Ready Mix Co. v Creed, 653 SW2d 79 [Tex]; Bedgood v Madalin, 589 SW2d 797 [Tex], revd in part on other grounds 600 SW2d 773; Landreth v Reed, 570 SW2d 486 [Tex].)

. Courts in many jurisdictions have also rejected the Dillon v Legg rule of liability to the foreseeable observer of an accident. (Tyler v Brown-Service Funeral Homes Co., 250 Ala 295; Slovensky v Birmingham News Co., 358 So 2d 474, 477 [Ala]; Keck v Jackson, 122 Ariz 114 [en banc]; Howard v Bloodworth, 137 Ga App 478; Strickland v Hodges, 134 Ga App 909; Hayward v Yost, 72 Idaho 415, 427, Rickey v Chicago Tr. Auth., 98 Ill 2d 546; Smith v Manchester Ins. & Ind. Co., 299 So 2d 517, 524 [La], cert den 302 So 2d 617; Cambrice v Fern Supply Co., 285 So 2d 863 [La]; Dupuy v Pierce, 285 So 2d 321 [La]; Stadler v Cross, 295 NW2d 552 [Minn]; Welsh v Davis, 307 F Supp 416 [D Mont — applying Montana law]; Fournell v Usher Pest Control Co., 208 Neb 684; Owens v Childrens Mem. Hosp., 480 F2d 465 [8th Cir — applying Nebraska law]; Whetham v Bismarck Hosp., 197 NW2d 678 [ND]; Shelton v Russell Pipe & Foundry Co., 570 SW2d 861 [Tenn]; Guilmette v Alexander, 128 Vt 116; Hughes v Moore, 214 Va 27, 34-35; Grimsby v Sampson, 85 Wn 2d 52; see, also, Williamson v Bennett, 251 NC 498.) Three States’ highest courts have left open the issue of whether to adopt the Dillon rule (Towns v Anderson, 195 Col 517, 520; Amodio v Cunningham, 182 Conn 80; Norwest v Presbyterian Intercommunity Hosp., 293 Ore 543, 559, n 18; see, also, Robb v Pennsylvania R.R., 58 Del 454, 458; Bedgood v Madalin, 600 SW2d 773, 776 [Tex]).

. (Note 33 Me L Rev 303, 305; Note 25 Hast L Rev 1248,1252; see Keck v Jackson, 122 Ariz 114,116 [en banc]; Hopper v United States, 244 F Supp 314 [D Col — applying Colorado law]; Farrall v Armstrong Cork Co., 457 A2d 763, 771 [Del]; Mancino v Webb, 274 A2d 711, 713-714 [Del]; Rickey v Chicago Tr. Auth., 98 Ill 2d 546; Resavage v Davies, 199 Md 479; Stadler v Cross, 295 NW2d 552, 555 [Minn]; Fournell v Usher Pest Control Co., 208 Neb 684, 687; Owens v Childrens Mem. Hosp., 480 F2d 465, 467 [8th Cir]; Whetham v Bismarck Hosp., 197 NW2d 678,684 [ND]; Shelton v Russell Pipe & Foundry Co., 570 SW2d 861, 864 [Tenn]; Vaillancourt v Medical Center Hosp., 139 Vt 138, 143; Guilmette v Alexander, 128 Vt 116, 119; Klassa v Milwaukee Gas Light Co., 273 Wis 176, 181-185; Waube v Warrington, 216 Wis 603, 608-615.)

. It is somewhat surprising that our research reveals only two reported appellate decisions actually upholding recovery in those jurisdictions that apply the zone-of-danger approach. (Bowman v Williams, 164 Md 397; Vinicky v Midland Mut. Cas. Ins. Co., 35 Wis 2d 246, 252-253.)

. Comment f to subdivision (3) of section 436 explains that this rule “applies where the defendant’s negligent conduct threatens bodily harm to the plaintiff through direct impact upon his person, or in some other way than through emotional disturbance, and the bodily harm is brought about instead by the plaintiff’s emotional disturbance at the peril or harm of a third person. In such a case the defendant is subject to liability if the third person is a member of the plaintiff’s immediate family, and the peril or harm to such a person occurs in the plaintiff’s presence. In other words, the rule stated in Subsection (2) applies in such cases, even though the plaintiff’s shock or fright is not due to any fear for his own safety, but to fear for the safety of his wife or child.”

. Another alternative to the Dillon rule adopted by some courts allows recovery for the emotional distress of viewing the death or injury of a member of the immediate family where the plaintiff was struck by the same force that caused the death or injury of the family member. (Beaty v Buckeye Fabric Finishing Co., 179 F Supp 688, 697-698 [ED Ark — applying Arkansas law]; Cadillac Motor Car Div. v Brown, 428 So 2d 301 [Fla], app pending; National Car Rental System v Bostic, 423 So 2d 915 [Fla], pet for rev den 436 So 2d 97, 99; Champion v Gray, 420 So 2d 348 [Fla], app pending; Howard v *231 Bloodworth, 137 Ga App 478; Strickland v Hodges, 134 Ga App 909; Preece v Baur, 143 F Supp 804 [D Idaho — applying Idaho law]; Kaiserman v Bright, 61 Ill App 3d 67.) We decline to adopt this impact rule (although there was such impact in each of the two appeals now before us) inasmuch as it is conceptually inconsistent with our holding in Battalla v State of New York (10 NY2d 237), where we abolished the impact requirement in negligent infliction of emotional distress cases.

. Incidentally, the application of the zone-of-danger principle in cases such as these will obviate the practical difficulties that juries otherwise have to face in seeking to separate the emotional distress suffered by a plaintiff attributable to his own physical injuries or fear thereof from the plaintiff’s emotional distress in consequence of observing an injured or dying family member.

. With respect to claims under the Workers’ Compensation Law, we have rejected the underlying rationale of Tobin (Matter of Wolfe v Sibley, Lindsay & Curr Co., 36 NY2d 505; see Lafferty v Manhasset Med. Center Hosp., 54 NY2d 277, 280).

. That the recovery allowed in these cases is not conceptualized as a new, discrete cause of action but as an element of damages cognizable in a familiar action in negligence for personal injuries may raise problems of impermissible splitting of a single cause of action. Such might have been the situation in the present instance in Kugel had not the settlement of plaintiffs’ causes of action for direct bodily injury been accompanied, by stipulation of the parties, by an express reservation of the claims now allowed.

. Inasmuch as all plaintiffs in these cases were married or related in the first degree of consanguinity to the injured or deceased person, we need not now decide where lie the outer limits of “the immediate family”.