*683 OPINION OF THE COURT
Joseph J. Maltese, J.
In this case of apparent first impression in New York, this court has determined that a brother and a sister are “immediate family” members for purposes of establishing a cause of action for emotional distress when they were both within a “zone of danger” while the sister observed her brother sustain serious physical injury and death.
Facts
This action was commenced to recover monetary damages as compensation for emotional distress and/or the psychological injuries allegedly sustained by the plaintiff, who was within a “zone of danger” resulting from a motor vehicle accident that occurred on January 9, 2005. The infant plaintiff, Shannon Shipley, and her brother, Jesse Shipley, were passengers in an automobile operated by the defendant, Warren S. Williams, Jr., when it was involved in a motor vehicle collision with an automobile being operated by defendant Joseph Napoleone. As a result of the collision, Shannon witnessed her brother Jesse in tremendous pain, suffering severe injuries, which ultimately resulted in his death.
Shannon and Jesse were brother and sister, born from the same parents and lived together with their mother and father in the same household since their birth. The basis of the defendants’ motion is that Shannon and Jesse Shipley were not closely related enough to be considered members of the “immediate family.”
The Court of Appeals defined “zone of danger” causes of action in 1984 in the seminal case Bovsun v Sanperi (61 NY2d 219 [1984]). In Bovsun (at 230-231), Judge Jones, writing for the Court, held that:
“where a defendant negligently exposes a plaintiff to an unreasonable risk of bodily injury or death, the plaintiff may recover, as a proper element of his or her damages, damages for injuries suffered in consequence of the observation of the serious injury or death of a member of his or her immediate family — assuming, of course, that it is established that the defendant’s conduct was a substantial factor bringing about such injury or death.”
The decision of the New York Court of Appeals was made in the shadow of the California Supreme Court’s ruling in Dillon v *684 Legg (68 Cal 2d 728, 441 P2d 912 [1968]) and the New York Court of Appeals case Tobin v Grossman (24 NY2d 609 [1969]). The Dillon case greatly altered the traditional theory of bystander recovery by permitting damages to be recovered for the emotional trauma caused when a plaintiff witnesses the injury or death of a close relative. The Supreme Court of California held in Dillon that even though the plaintiff was not himself in the zone of danger of physical injury, he may have a cause of action, provided that the emotional injury was reasonably foreseeable. Many state courts were reluctant to expand liability for mental distress that may have resulted from observing a third person’s peril.
Shortly after Dillon, the New York Court of Appeals decided Tobin v Grossman (supra), where the Court rejected the foreseeability approach to bystander recovery. The Court in Tobin declined to recognize a cause of action for emotional distress suffered by the foreseeable observer of an accident. In Tobin, a mother sought damages for the mental distress that she suffered in viewing her child being struck by an automobile. Since the mother in Tobin was not in danger of suffering bodily harm from the accident, the Court did not allow a separate cause of action for emotional distress.
After the decision in Tobin, the Court of Appeals held in Bovsun that “[i]n disposing of the appeal in Tobin we were not, however, required to confront the precise issue presented to us for the first time in the two appeals now before us inasmuch as the plaintiff in Tobin had not been within the zone of danger of bodily harm” (Bovsun at 228). The Court of Appeals, in tailoring their opinion in Bovsun, focused on restricting the liability in a “much narrower fashion than does the Dillon rule” (Bovsun at 229). In Bovsun, the High Court determined that the relevant element was not whether a person is in the class of persons considered eligible to recover, namely, the “immediate family,” but rather whether those eligible immediate family members were within the “zone of danger.”
The Court of Appeals once again wrestled with the definition of “immediate family” in 1993 in Trombetta v Conkling (82 NY2d 549 [1993]). In Trombetta, the Court held that a cause of action for bystander emotional distress is not available “to all bystanders who may be able to demonstrate a blood relationship coupled with significant emotional attachment or the equivalent of an intimate, immediate familial bond” (Trombetta at 553). Next the Court stated that “[s]ound policy and strong *685 precedents justify our confinement and circumscription of the zone of danger rule to only the immediate family as surveyed in Bovsun” (id.).
However, the Court of Appeals never decided what constitutes an “immediate family.” The facts of Trombetta were that Darlene Trombetta and her aunt, Phyllis Fisher, were crossing a street in Utica, New York, when the plaintiff noticed a tractor trailer bearing down on them. When the plaintiff realized that the tractor trailer was not going to stop, she grabbed her aunt’s hand in a failed attempt to pull her from the path of peril. The plaintiff watched as the wheels of the truck ran over her aunt, killing her instantly. At the plaintiff’s deposition, she testified that her mother had died when she was 11 years old and her aunt became the maternal figure in her life. They had always lived near each other and enjoyed many activities together on a daily basis. At the time of the accident, the plaintiff was 37 years old and her aunt was 59 years old. In denying the aunt-to-niece emotional distress claim, the Trombetta court noted that in making its decision, there were several competing policy interests. Specifically, the Court stated that if it were to expand this liability beyond the scope of Bovsun there would be a difficulty “in containing liability, a morass of case-by-case adjudication, and the potential for false and inflated claims.” Therefore, the Court confined the class of potential plaintiffs to conform with Bovsun’s immediate family principle.
In Arroyo v New York City Health & Hosps. Corp. (163 AD2d 9 [1st Dept 1990]), the Appellate Division, First Department, discussed a sibling’s ability to recover for psychic injury. The facts of Arroyo were that a brother (three years old) and sister (two years old) were both admitted to Bellevue Hospital for the treatment of lead poisoning and were placed in adjacent beds to be intravenously administered a calcium EDTA solution. While the older brother watched, his sister went into cardiac arrest and died, allegedly due to a failure to properly control the rate of flow of the solution by use of an infusion pump, thereby causing a sharp drop in her blood pressure. Counsel for Arroyo alleged that the surviving brother observed his sister’s physical distress and contemporaneously feared for his own safety.
The First Department held in Arroyo that the brother was unable to maintain a cause of action for the emotional distress caused by watching his sister die because he was not in the *686 “zone óf danger.” The Court reasoned that since “the siblings were treated with discrete intravenous systems, we are unable to accept plaintiffs attempt to characterize the threat of bodily injury to the older sibling and the breach of defendant’s duty of care as to him as identical to that posed to and suffered by the younger sibling” (at 10). The Court focused its rationale on the actual “zone of danger,” and never stated whether the brother and sister were immediate family members.
In Jun Chi Guan v Tuscan Dairy Farms (24 AD3d 725 [2005]), the Appellate Division, Second Department, followed the principles set forth in Bovsun and Trombetta when it denied expanding the “immediate family” to a grandmother who witnessed the death of her two-year-old grandson, whom she was pushing across a street in a stroller at the time of the accident. The Second Department specifically stated that “[t]he Court of Appeals has exercised its prerogative to balance the competing interests and announce the public policy of this state to limit liability to the class of persons identified as ‘immediate family’ in Bovsun” (at 726). The Second Department then went on to state that “[t]his class of persons does not include a plaintiff’s grandson, and it is not appropriate for this Court to expand the class absent further direction from the Court of Appeals or the New York State Legislature” (id.).
In the instant action, the defendants argue that dismissal of the plaintiff’s complaint is mandated through a degree of consanguinity analysis. Brothers and sisters are relatives of the second degree of consanguinity. The defendants assert that Bovsun stands for the position that only relatives of the first degree of consanguinity are eligible to assert an emotional distress “zone of danger” claim. However that is not the holding in Bovsun. In footnote 13 (at 233) of the Bovsun decision, the Court of Appeals stated that “[inasmuch as all plaintiffs in these cases were married or related in the first degree of consanguinity to the injured or deceased person, we need not now decide where lie the outer limits of the ‘immediate family’ ” (emphasis added).
In Bovsun, the Court of Appeals did not need to decide what constitutes an “immediate family” and put off such decision for another day. But now that day has arrived. While the Court of Appeals has not formally defined what constitutes an “immediate family,” the New York State Legislature and others have defined the term “immediate family” with various expansive *687 meanings. However, every definition of “immediate family” includes the terms siblings or brothers and sisters.
Penal Law § 120.40 (4), which lists the definitions to be applied to the “stalking” offenses of Penal Law §§ 120.45, 120.50, 120.55 and 120.60 states: “ ‘Immediate family’ means the spouse, former spouse, parent, child, sibling, or any other person who regularly resides or has regularly resided in the household of a person” (emphasis added).
Public Health Law § 238 (8) states: “ ‘Immediate family member’ shall include spouse; natural and adoptive parents, children and siblings-, stepparents, stepchildren and stepsiblings; fathers-in-law, mothers-in-law, brothers-in-law, sisters-in-law, sons-in-law and daughters-in-law; and grandparents and grandchildren” (emphasis added).
Public Health Law § 2805-e (2) (c) states: “ ‘Immediate family’ of any person includes each parent, child, spouse, brother, sister, first cousin, aunt and uncle of such person, whether such relationship arises by reason of birth, marriage or adoption” (emphasis added).
Social Services Law § 461-e (4) (a) (x) states in part: “(3) ‘immediate family’ of any person includes each parent, child, spouse, brother, sister, first cousin, aunt and uncle of such person whether such relationship arises by reason of birth, marriage or adoption” (emphasis added).
In reference to rent regulations, 9 NYCRR 2104.5 (a) (1), pertaining to occupancy by landlord or immediate family, states: “As used in this subdivision, the term immediate family includes only a husband, wife, son, daughter, stepson, stepdaughter, father, mother, stepfather, stepmother, brother, sister, grandfather, grandmother, grandson, granddaughter, father-in-law, or mother-in-law, son-in-law or daughter-in-law of the landlord” (emphasis added).
Emergency Tenant Protection Regulations (9 NYCRR) § 2500.2 in the definition section states: “(m) Immediate family. A husband, wife, son, daughter, stepson, stepdaughter, father, mother, stepfather, stepmother, brother, sister, grandfather, grandmother, grandson, granddaughter, father-in-law, mother-in-law, son-in-law, or daughter-in-law of the owner” (emphasis added).
Rent Stabilization Code (9 NYCRR) § 2520.6 states in its definitions section: “(n) Immediate family. A husband, wife, son, daughter, stepson, stepdaughter, father, mother, stepfather, *688 stepmother, brother, sister, grandfather, grandmother, grandson or granddaughter, father-in-law, mother-in-law, son-in-law or daughter-in-law of the owner” (emphasis added).
Rules of the Chief Judge (22 NYCRR) § 24.6 states:
“(f) Death in the Immediate Family. Leave of up to four consecutive workdays (not to exceed a total of 28 work hours) shall be allowed immediately following the death of an employee’s spouse; domestic partner; natural, foster or step: parent, child, brother or sister; father-in-law or mother-in-law; grandparent or grandchild; or any relative residing with the employee or an individual for whom the employee has been the primary caregiver” (emphasis added).
Lastly, Black’s Law Dictionary also defines an “[immediate family[:] Term generally referring to one’s parents, wife or husband, children, and brothers and sisters” (Black’s Law Dictionary 750 [6th ed 1999] [emphasis added]).
Primarily, it is the province of the New York State Legislature and the Governor to determine the public policy of this state. The Legislature has defined “immediate family” in the various statutes listed above, which all include, at the very least, the terms siblings or brothers and sisters. However, it is the role of trial courts to decide cases based upon the facts presented and the logical application of those legal definitions defined by the statutes of this state in keeping with the precedents of appellate courts. Since the Court of Appeals refrained from defining the term “immediate family” as it pertains to those within the “zone of danger,” this trial court must now deal with that issue in this case.
In the instant action, the brother and sister Jesse and Shannon Shipley were both in the same car when it was involved in a serious motor vehicle accident. There is no question that as passengers in the same vehicle at the time of impact they were both in the same “zone of danger.” The defendants posit that “[t]he class of persons who may claim under the ‘zone of danger’ rule is strictly limited to spouses, parents and issue of an injured person” (affidavit in support of Robert Seigal, Esq., at 3). This, however, is a misstatement of law. The current state of the law in New York State is that the class of persons who may claim under the “zone of danger” rule is strictly limited to the injured person’s “immediate family.” To find that a brother and sister, who lived *689 together in the same household at the time of the accident, are not members of their “immediate family” is contrary to the definitions established by the State Legislature and legal reason.
Accordingly, it is hereby ordered that the defendants’ motion to dismiss the plaintiffs cause of action based upon the alleged emotional distress sustained while she was in the “zone of danger” observing her brother sustain serious injury and death is denied in its entirety.